ALEX B. KAUFMAN (Pro Hac Vice pending)
AKaufmann@hallboothsmith.com
ERIC UNDERRINER (EU8646)
EUnderriner@hallboothsmith.com
TODD GILBERT (TG5953)
TGilbert@hallboothsmith.com
HALL BOOTH SMITH, P.C.
366 Madison Avenue, 5th Floor
New York, NY 10017
T: 212.805.3630 | F: 404.954.5020

Attorneys for Plaintiff

**IN THE UNITED STATE DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YURI GARMASHOV,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES PARACHUTE ASSOCIATION, INC.<br><br>　　　　Defendant. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND JURY DEMAND** |

Plaintiff Yuri Garmashov ("Plaintiff" or "Mr. Garmashov") by and through his undersigned counsel, files this Complaint for breach of contract, gross negligence, and injunctive relief against the United States Parachute Association, Inc. ("Defendant" or "USPA") and alleges as follows:

## JURISDICTION

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Plaintiff is a citizen and resident of California, and Defendant is incorporated in the State of New York, with its principal place of business in Virginia, and the amount in controversy exceeds $75,000.

## VENUE

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because the Defendant is incorporated in the State of New York.

## PARTIES

3. Plaintiff is, and at all times relevant was, a citizen and resident of California residing in Sacramento County, California.

4. Defendant is a nonstock corporation incorporated in the State of New York, with a principal place of business at 5401 Southpoint Centre Boulevard, Fredericksburg, VA 22704.

## PROCEDURAL HISTORY

5. This matter was originally commenced by way of Complaint (the "Original Complaint"), bearing Case. No. 2:20-cv-01392-KJM-CKD, filed on July 8, 2020 in the United States District Court for the Eastern District of California, Sacramento Division.

6. Prior to the Defendant filing an Answer, the parties commenced settlement discussions which resulted in an agreement to dismiss the Original Complaint without prejudice so the parties could attempt to resolve this matter.

7. The parties agreed to hold a hearing to address Plaintiff's allegations which give rise to the present action. The hearing was help in January 2021 and failed to resolve this matter.

8. Contemporaneous to the dismissal and hearing discussed above, the parties agreed to toll any applicable statute of limitations relevant to the allegations set forth in the Original Complaint, which are identical to those filed herein.

## FACTUAL ALLEGATIONS

9. The USPA is a self-governing membership association for the sport of skydiving. The USPA serves as an advocate and lobbyist for the sport of skydiving, disseminates a monthly publication for its members, and coordinates competitions and awards.

10. In addition to the functions described above, the USPA publishes and maintains skydiving training manuals as well as issues licenses and instructional ratings to members that qualify them to teach other skydivers. Skydivers utilize their USPA-issued ratings and credentials in order to obtain paid work in the skydiving sector.

11. An instructor rating is a credential that the USPA issues to qualified individuals who wish to teach skydiving to others as an economic opportunity. The USPA offers varying levels of ratings.

12. Mr. Garmashov has been a dues paying member of the USPA since 2000. He is a professional skydiving instructor, has completed over 9,100 skydives, has conducted numerous skydiving training courses across the world, and has coordinated stunts that have been showcased on digital media platforms such as You Tube.

13. Prior to the events at issue in this case, Mr. Garmashov held several examiner ratings issued by the USPA. He earned a majority of his income by training skydivers using those ratings.

**THE USPA WRONGFULLY REVOKES MR. GARMASHOV'S RATINGS**

14. In August of 2015, Mr. Garmashov was approached by another skydiver named Rob Pooley.

15. Mr. Pooley's Tandem Examiner rating had been suspended by the USPA, and he was thus unable to train skydivers by himself.

16. Mr. Pooley asked Mr. Garmashov if he could work under his instruction until the USPA reinstated Pooley's ratings.

17. Mr. Garmashov agreed to work with Mr. Pooley on the condition that Mr. Pooley could only work with students and conduct classes when Mr. Garmashov was present to personally supervise.

18. In 2015, Mr. Garmashov and Mr. Pooley helped several individuals achieve their certifications in that manner.

19. On May 20, 2016, Mr. Garmashov left the United States for the summer to work abroad. Mr. Garmashov did not return to the United States until August 2, 2016.

20. Before Mr. Garmashov left for the summer, Mr. Pooley told Mr. Garmashov that his ratings suspension would be lifted in June, and when that happened that he would return to training individuals by himself.

21. Mr. Garmashov and Mr. Pooley corresponded over the summer, but did not conduct any more trainings together.

22. On August 6, 2016, there were two fatalities during a tandem jump at the Lodi Parachute Center (the "Lodi Center") in California.

23. When Mr. Garmashov spoke with others in the skydiving community about the incident, Mr. Garmashov discovered that while he was out of the country for the summer, Mr. Pooley had forged his signature on the certification paperwork for the fatal skydive. This certification paperwork with Mr. Garmashov's forged

signature was used by the skydiving instructor who was killed at the Lodi Center in the tragic accident that also took the life of another skydiver.

24. As Mr. Garmashov had been out of town on August 6, 2016, and out of the country for several months prior, he unequivocally lacked any form of participation or involvement in the instruction, certification, or related events of the August 6, 2016 skydive describe above.

25. The USPA suspended Mr. Garmashov's instructor ratings in response to the August 6, 2016 fatality, despite Mr. Garmashov's explanations that he had been out of the country when the instructor had been trained and that his signature had been forged.

## THE USPA FAILED TO FOLLOW ITS PROMISED PROCEDURES

26. Membership in the USPA is governed and regulated by the USPA Governance Manual ("Governance Manual"). A true and correct copy of the current Governance Manual is attached hereto and incorporated herein by reference as **Exhibit 1**. Upon information and belief, the Governance Manual in effect in 2016 was identical in all relevant respects.

27. As noted above, one of the benefits received in return for membership in the USPA is eligibility to earn skydiving licenses and ratings. A skydiver cannot earn a rating from the USPA without membership in the USPA.

28. Once the USPA awards a rating, the USPA Governance Manual provides the procedure that the USPA must follow in order to suspend that rating. *See* Ex. 1 at § 1-6 ("Disciplinary Actions").

29. The Governance Manual constitutes part of a binding agreement between the members of the USPA and the USPA itself. As part of this covenant, the USPA agrees that in exchange for members paying their annual membership fees, the USPA will award ratings to qualified individuals and will abide by the disciplinary procedures set out in the Governance Manual.

30. The Disciplinary Action section of the Governance Manual "establishes the procedures for instituting an action against a member, the minimum due process that must be accorded a member against whom such action is brought and the appellate review that is available before such action is finalized." Ex. 1 at § 1-6.3.

31. The Governance Manual specifies that only certain conduct constitutes a violation sufficient to warrant a disciplinary proceeding that may lead to the revocation of credentials. Per the Governance Manual, disciplinary actions will be taken only against a USPA member who:

    a. Willfully, flagrantly, or continuously violates the USPA Basic Safety Requirements;

    b. Aids and abets a willful violation of the USPA Basic Safety Requirements;

  c. Is so grossly negligent in conduct or acts as to imminently imperil fellow skydivers or aircraft, persons, or property on the ground, or wantonly disregards personal safety or the safety of others;

  d. Engages in any conduct as a skydiver that a person of reasonable prudence would anticipate as being likely to bring public contempt upon their person, upon skydivers or upon USPA;

  e. Engages in any conduct that reasonably jeopardizes the well-being of USPA;

  f. Willfully falsifies any document, certificate or record connected with or relating to skydiving;

  g. Willfully and knowingly misrepresents any material fact in connection with any application filed with USPA;

  h. As the owner or controlling manager of a Group Member drop zone, willfully or flagrantly violates the terms of the Group Member Pledge; or

  i. Has a duty of confidentiality and beaches that duty.

  32. When a possible disciplinary situation comes to the attention of the USPA, an investigation is begun by the USPA's Compliance Group. *See* Ex. 1 at § 1-6.5. The Compliance Group is charged with investigating violations and handing

down discipline to USPA Members who are found in violation of the provisions of the Governance Manual. *Id.*

33. According to the Governance Manual, if there is enough evidence for a prima facie case of a membership violation, the individual at issue must be notified. *See* Ex. 1 at § 1-6.5(C). The notification must cite the specific violation they are alleged to have committed, sufficient facts to support the allegation, and provide a statement advising the member of their "right to offer…any statement or evidence in defense or as grounds for mitigation, and their right to an informal hearing before the regional director and a hearing before the [Compliance Group]." *Id.*

34. In suspending Mr. Garmashov's ratings, the USPA failed to follow most of the procedures and safeguards set out in the Governance Manual.

35. For example, in direct violation of his rights under the Governance Manual, during his unofficial hearing, Mr. Garmashov was not allowed to have an attorney present, nor was he allowed to call Mr. Pooley as a witness. *See* Ex. 1 at § 1-6.5(E)(2)-(3).

36. In addition, under the Governance Manual, Mr. Garmashov was entitled to a presumption innocence, and the burden of proof was on the Compliance Group to prove his violation by a preponderance of the evidence. Ex. 1 at §§ 1-6.5(F)(1); 1-6.5(G).

37. Mr. Garmashov attempted to provide detailed evidence showing that he was out of the country when the certification of the tandem instructor at the Lodi Center was signed, as well as a notarized letter from Mr. Pooley confessing to forging Mr. Garmashov's name without Mr. Garmashov's knowledge or participation ("Pooley's Confession").  A true and correct copy of Pooley's Confession is attached hereto and incorporated by reference as **Exhibit 2**.

38. Despite this exonerating evidence, the Compliance Group investigating Mr. Garmashov stated that they did not believe Mr. Pooley had written the letter and admonished Mr. Garmashov to "tell the truth" about his situation.

39. Also, in violation of his rights under the Governance Manual, Mr. Garmashov was never provided with any of the evidence against him or with any of the notes from his unofficial hearing.  *See* Ex. 1 § 1-6.5(C).

40. Despite these transgressions, Mr. Garmashov performed his obligations under the USPA membership contract and willingly participated in the full appeals process laid out in the governance Manual.

41. Despite the violations of Mr. Garmashov's rights under the Governance Manual, his appeals were denied by the USPA, and Mr. Garmashov's examiner ratings to date remain suspended, essentially eliminating his ability to work in his profession.

42. The USPA egregiously violated the membership agreement with Mr. Garmashov by failing to provide him with his contractual rights to a fair and impartial hearing process, to see the evidence against him, to have an attorney represent him, and to present evidence. The USPA did so with a willful, wanton, and with a conscious disregard for Mr. Garmashov's rights.

## COUNT I

### Breach of Contract

43. Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1 to 42.

44. In exchange for membership dues, the USPA agrees to provide certain benefits to members, and to abide by certain rules, including those set out in the Governance Manual (the "Membership Agreement").

45. The Membership Agreement is a valid and enforceable contract between Mr. Garmashov and the USPA. Mr. Garmashov and the USPA entered into this contract.

46. Mr. Garmashov has fully performed his obligations under the Membership Agreement.

47. The USPA's suspension of Mr. Garmashov's examiner ratings in flagrant disregard for the disciplinary procedures laid out in the Governance Manual,

which the USPA was obligated to follow, constitutes a material breach of the Membership Agreement.

48. The USPA's breach of contract constitutes a willful violation of Mr. Garmashov's rights as per the Membership Agreement and has caused damages to Mr. Garmashov in excess of $75,000.

## COUNT II

### Breach of Implied Covenant of Good Faith and Fair Dealing

49. Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1 to 48.

50. The Membership Agreement is a valid and enforceable contract between Mr. Garmashov and the USPA.

52. Mr. Garmashov has fully performed his obligations under the Membership Agreement.

53. Included in every contract, including the Membership Agreement, is an implied duty of good faith and fair dealing between the parties.

54. Specifically, the USPA had a duty to act in good faith and deal fairly with Mr. Garmashov with respect to the disciplinary rules contained in the Governance Manual.

55. The USPA breached its duty of good faith and fair dealing by flagrantly disregarding the disciplinary procedures laid out in the Governance Manual and suspending Mr. Garmashov's examiner ratings.

56. The USPA's breach of the implied covenant of good faith and fair dealing constitutes a willful violation of Mr. Garmashov's rights as per the USPA Membership Agreement, and unfairly interfered with Mr. Garmashov's rights to receive the benefits of the Membership Agreement.

57. The USPA's conduct has caused damages to Mr. Garmashov in excess of $75,000.

## COUNT III

### Gross Negligence

58. Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1 to 57.

59. The USPA had a duty to Mr. Garmashov to provide a fair and impartial hearing in the event of a membership dispute, and allow him all of the rights set out in the Governance Manual.

60. The USPA breached its duty to Mr. Garmashov by refusing to presume him innocent, refusing to give him a fair and impartial hearing process, refusing to allow him to see the evidence against him, refusing to allow him to have an attorney represent him, and refusing to allow him to present fully exonerating evidence.

61. The USPA breached its duty to Mr. Garmashov despite knowing that Mr. Garmashov was innocent of any wrongdoing, and with a willful and conscious disregard for Mr. Garmashov's rights.

62. The USPA also published a statement blaming Mr. Garmashov for the fatalities at the Lodi Center, despite knowing that Mr. Garmashov was innocent of any wrongdoing, and with a willful and conscious disregard for Mr. Garmashov's rights.

63. These acts by the USPA constituted a lack of any care and/or were so unreasonable that the USPA knew or should have known that injury to Mr. Garmashov was highly probable.

64. As a direct and proximate result of the USPA's willful misconduct, Mr. Garmashov was injured and is entitled to recover compensatory damages in an amount to be proven at trial.

65. As alleged herein, the USPA is guilty of oppression, fraud and/or malice as defined in California Civil Code section 3294, and Mr. Garmashov should recover, in addition to actual damages, exemplary and punitive damages in an amount to be proven at trial.

## COUNT IV

## Violation of Cal. Bus. & Prof. Code § 17200 *et seq.*

66. Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1 to 65.

67. Sections 17200 *et seq.* of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair," and "fraudulent" business practice.

68. Section 17200 prohibits any "unfair…business act or practice." As described in the preceding paragraphs, the USPA flagrantly violated their own disciplinary procedures in order to blame Mr. Garmashov for the fatalities at the Lodi Center, including refusing to allow him counsel, or to examine witnesses, as well as making public statements regarding his alleged culpability despite knowing that he was innocent of any wrongdoing.

69. The USPA's above-mentioned acts constitute unfair and deceptive practices in violation of California Business & Professions Code sections 17200 *et seq.*

70. The USPA's conduct caused and continues to cause substantial injury to Mr. Garmashov.

71. As a direct and proximate result of Defendant's unfair and deceptive acts, Mr. Garmashov has suffered an injury in the form of lost future earnings.

72. Mr. Garmashov has been damaged by the USPA's actions in an amount to be proven at trial.

73. Additionally, pursuant to California Business & Professions Code section 17203, Mr. Garmashov is entitled to an injunction requiring the USPA to reinstate his examiner ratings and afford him all attendant privileges of USPA membership.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

a. Injunctive relief requiring Defendant to reinstate Mr. Garmashov's examiner ratings and afford him all attendant privileges of USPA membership.

b. Judgment in Mr. Garmashov's favor against Defendant for damages, including exemplary damages pursuant to California Civil Code section 3294, attorneys' fees, costs, and interest; and

c. For such other relief as the Court may deem proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Yuri Garmashov demands trial by jury in this action of all issues so triable.

DATED:_____

                                        **HALL BOOTH SMITH, P.C.**

By:  /s/_____

      ALEX B. KAUFMAN
      ERIC UNDERRINER
      TODD GILBERT
      Attorneys for Plaintiff