UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

YURI GARMASHOV,

                              Plaintiff,

          - against -

UNITED STATES PARACHUTE
ASSOCIATION, INC.,

                              Defendant.
_____

21-cv-4917 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

     The plaintiff, Yuri Garmashov, brought this action against

the United States Parachute Association, Inc. ("USPA"), in

connection with the suspension of his membership from the USPA.

The plaintiff now moves to enforce a settlement agreement into

which the plaintiff claims the parties entered, and for an award

of the attorney's fees incurred in preparing the motion. For the

following reasons, the motion to enforce the settlement

agreement is **granted**, and the motion for attorney's fees is

**denied**.

                              I.

     The following facts are taken from the parties' motion

papers, and are not disputed.

     The plaintiff was a member of the USPA until 2016, when he

was suspended from the organization. The plaintiff then brought

this action, alleging that his suspension constituted a breach

of contract and bringing certain related claims. For purposes of

this litigation, the plaintiff is represented by Alex B. Kaufman

and Eric M. Underriner, and the defendant is represented by

Kenneth A. McLellan and Keith R. Roussel. The defendant moved to

compel arbitration, but the Court denied that motion. ECF No.

25. The Court referred the parties to mediation. Id.

On May 11, 2022, the parties participated in a mediation

via videoconference with court-appointed mediator Holly H.

Weiss.[1] During the mediation, the parties appeared to reach

agreement, and concluded the mediation.

On May 11, 2022, at 2:18 p.m., McLellan emailed the

mediator, stating, "We communicated with our clients and the

carrier last night and this morning, and their position has not

changed. The offer remains: $ [redacted] firm. No membership or

ratings. Take it or leave it. Confidentiality and no admission

of liability. Full general release."[2]  ECF No. 39 ¶ 20. The email

explained that the defendant's original understanding had been

that the plaintiff was seeking reinstatement, as opposed to

money damages, and that the defendant was surprised when the

plaintiff indicated that he would not settle unless he received

---

[1] The docket reflects that the mediation took place on May
9, 2022. However, because the defendant does not dispute the
plaintiff's assertion that the mediation took place on May 11,
2022, the Court also accepts this date, which in any event does
not affect the outcome of the case.

[2] Unless otherwise noted, this Memorandum Opinion and Order
omits all internal alterations, citations, footnotes, and
quotation marks in quoted text.

some monetary compensation. McLellan went on to indicate that

there had been a point where

> the USPA was still willing to permit Plaintiff to become
> a member and to pay Plaintiff some monetary amount to
> resolve this lawsuit mostly on a cost basis. We advised
> during the course of the negotiations that at some point
> if the monetary demand became too high that the
> Plaintiff's Request for reinstatement to USPA would no
> longer be considered/offered. When the USPA's offer went
> up to $ [redacted] membership was removed from the
> equation. Plaintiff's counsel then took the stance that
> only a [higher] offer would be considered. We and the
> USPA rightfully considered that as an abandonment of the
> request for membership. Plaintiff and his counsel burned
> a bridge at that point. . . . We ask that you convey
> this. Of course, when we start doing discovery, the offer
> could change or be pulled.

Id.

Around this time, plaintiff's counsel drafted a draft

settlement agreement in accordance with plaintiff's counsel's

understanding of the agreement reached at the mediation.

Although the draft is redacted, the defendant does not dispute

the plaintiff's assertion that the only terms delineated in the

draft were that "[t]he case would settle for a specified sum of

$150,000, with mutual dismissals with prejudice, mutual general

releases of all claims and allegations, mutual confidentiality

as to the terms of the Agreement, and no admission of liability

by any party." ECF No. 37 ¶ 20; id., Ex. 5. The plaintiff

executed the document entitled "Mediation Settlement Agreement

Terms and Conditions," and at 4:33 p.m., the draft was

circulated to defense counsel, with a copy to the mediator.

3

On May 12, 2022, at 3:53 p.m., Kaufman, plaintiff's counsel, asked the mediator for an update. At 8:35 p.m., McLellan, defense counsel, emailed all counsel and the mediator, stating:

> Holly Weiss asked that I respond to this email to confirm that we have an agreement in principle, which we do. We sent the term sheet to our client for signature. If you want to move the process along, please end [sic] a draft formal proposed settlement agreement. Carriers generally require an executed IRS W-9 form and written payment instructions.

Id. Ex. 8 (emphasis added).

At 11:06 p.m., Kaufman replied, "Can you please confirm that the term sheet is accepted?" Id. On May 13, 2022, at 8:12 a.m., McLellan replied and appeared to add a term that Garmashov "doesn't come back," and stated that term is "implicit in this deal":

> The term sheet added mutual general releases, which I don't expect to be a problem and will recommend. I anticipate speaking with [USPA executive director] Mr. Berchtold today on the sheet. The point of this settlement is that USPA pays money and, in return, does not have to deal with Mr. Garmashov any more. That is implicit in this deal, and will be spelled out in the formal settlement agreement. He doesn't come back. You don't come back. No more applications to be in the USPA; no demands for arbitration; no applications to get back in. I want that to be clear. Please confirm that we're in agreement on this.

Id. (emphasis added). At 12:02 p.m., Kaufman responded:

> As per your May 12th email at 8:35pm you agreed we have an agreement in principle. Those were the only terms discussed and agreed to. We will move to enforce the settlement agreement per the term sheet and acceptance

4

email. Please confirm that this will not be necessary.
If it is, we will seek additional costs and attorney
fees for this effort. Your revisionist history email of
this morning interjects new terms . . . . To be crystal
clear — Mr. Garmashov has not and will not agree to those
proposed covenants that have just appeared this morning
— and certainly not at the agreed upon price of . . .
per the agreement in principle.

Id.

At 12:07 p.m., McLellan responded, "Is it your position
that he will be seeking to reapply for membership? The point of
this deal is that he goes away. Do you have a different
understanding?" Id.

At 12:14 p.m., Kaufman replied, "Here are the wire
instructions. The w-9 will be forthcoming." Id. As of the date
of this Memorandum Opinion and Order, the defendant has not
signed the term sheet.

On May 20, 2022, the plaintiff filed a motion to enforce
the purported settlement agreement and for attorney's fees
incurred in preparing the motion. ECF No. 36. That motion is now
before the Court.

**II.**

A "district court has the power to enforce summarily, on
motion, a settlement agreement reached in a case that was
pending before it." Cruz v. Korean Air Lines Co., 838 F. Supp.
843, 845 (S.D.N.Y. 1993). A party seeking to enforce a purported
settlement agreement has the burden of proof to demonstrate that

the parties actually entered into such an agreement. See

Lightwave Techs., Inc. v. Corning Glass Works, 725 F. Supp. 198,

200 (S.D.N.Y. 1989).

A settlement agreement is a contract, and, to form a valid

contract, there must be "an objective meeting of the minds," as

determined by "the objective manifestations of the intent of the

parties as gathered by their expressed words and deeds." 26th

St. Partners, LLC v. Fed'n of Orgs. for N.Y. State Mentally

Disabled, Inc., 122 N.Y.S.3d 349, 351 (App. Div. 2020).

Under New York law, there are two kinds of preliminary

contracts. Murphy v. Inst. of Int'l Educ., 32 F.4th 146, 150 (2d

Cir. 2022).

> The first (Type I) occurs when the parties have reached
> complete agreement (including the agreement to be bound)
> on all the issues perceived to require negotiation. This
> kind of agreement is preliminary only in the sense that
> the parties desire a more elaborate formalization of the
> agreement which, although not necessary, is desirable.
> The second (Type II) is one that expresses mutual
> commitment to a contract on agreed major terms, while
> recognizing the existence of open terms that remain to
> be negotiated. In the second type of preliminary
> agreement, the parties bind themselves to a concededly
> incomplete agreement in the sense that they accept a
> mutual commitment to negotiate together in good faith in
> an effort to reach final agreement within the scope that
> has been settled in the preliminary agreement. While a
> party cannot demand performance under a Type II
> agreement, a party may demand that his counterparty
> negotiate the open terms in good faith toward a final
> contract incorporating the agreed terms.

Id. at 150-51. In determining whether a preliminary agreement between the parties is binding as a Type 1 agreement, the Court may consider a number of factors, including:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Winston v. Mediafare Ent. Corp., 777 F.2d 78, 80 (2d Cir. 1985); accord Chang v. CK Tours, Inc., No. 18-cv-6174, 2022 WL 1963663, at *4 (S.D.N.Y. June 6, 2022). The existence of terms on which the parties have not agreed does not preclude the existence of a Type I agreement as long as "there were no issues outstanding that were perceived by the parties as requiring negotiation." Murphy, 32 F.4th at 152.

The plaintiff contends that, as of McLellan's May 12, 2022, 8:35 p.m. email, there was an enforceable agreement whereby the defendant would pay the plaintiff a lump sum in exchange for a general release. The plaintiff acknowledges that this purported agreement did not provide for the plaintiff's re-admission to the USPA. The defendant argues that, to the contrary, the parties had not reached an enforceable agreement, because the parties had not agreed on certain terms — most importantly, whether the settlement agreement would bar the plaintiff from ever re-applying for admission to the USPA.

7

In this case, on balance, the Winston factors indicate that
the parties reached a binding and enforceable agreement as of
McLellan's May 12, 2022, 8:35 p.m. email in which the
defendant's agent – its attorney – confirmed that "we have an
agreement in principle, which we do." ECF No. 37, Ex. 8. At that
point, the terms of this simple settlement agreement had been
agreed to. The first factor counsels in favor of finding a
binding agreement, because the parties did not expressly reserve
the right not to be bound in the absence of a "more elaborate
formalization." See id. at 150; Kowalchuk v. Stroup, 873
N.Y.S.2d 43 at *2, *5 (App. Div. 2009); N. Fork Country, LLC v.
Baker Pubs., Inc., 436 F. Supp. 2d 441, 443, 445 (E.D.N.Y.
2006). The second factor weighs against finding a binding
agreement, because there was no substantial partial performance,
other than the exchange of promises and the subsequent
transmission of a W-9 form.

The third factor cuts in favor of finding a binding
agreement. At the time that McLellan sent the May 12, 2022, 8:35
p.m. email, the parties objectively appeared to have reached
agreement as to material terms: the parties had agreed on a
dollar sum, there would be mutual general releases and dismissal
of the litigation, and there was neither a provision for the
plaintiff's readmission to the USPA as part of the settlement
agreement nor an explicit provision that the plaintiff would not

apply for readmission. In his 8:35 p.m. email, defense counsel confirmed that there was an agreement in principle. While the terms of the general releases and confidentiality provisions had not been drafted, there was no indication, even in the subsequent 11:06 p.m. email, that there would be a problem. See Murphy, 32 F.4th at 152 (finding an enforceable Type I agreement despite the existence of open terms, including a confidentiality provision that the parties had described as "material," because there was "no evidence . . . to suggest that those new terms were considered open issues in need of negotiation"); N. Fork Country, 436 F. Supp. 2d at 443, 446; Pretzel Time, Inc. v. Pretzel Int'l, Inc., No. 98-cv-1544, 2000 WL 1510077, at *4 (S.D.N.Y. Oct. 10, 2000).

While the defendant argues that it remained to be negotiated whether the plaintiff would be permitted to re-apply for membership in the USPA, the communications between the parties do not reflect any discussion of such a condition before defense counsel confirmed in his 8:35 p.m. email that "we have an agreement in principle." ECF No. 37, Ex. 8. The defendant's email to the mediator did not include a condition that Garmashov would never re-apply for membership in the USPA. The first time this condition is mentioned is in the defendant's May 13, 2022, 8:12 a.m. email, in which defense counsel described this condition as "implicit." Accordingly, based on the parties'

objective manifestations of their intent, the parties had agreed on all materials terms as of McLellan's May 12, 2022, 8:35 a.m. email, and defense counsel's subsequent May 13, 2022, 8:12 a.m. email was an effort to add a condition that had not been agreed to.

Finally, the fourth factor, whether this type of contract is usually reduced to writing, cuts in favor of finding a binding agreement. Under this factor, the complexity of the agreement, not its categorization, is the relevant consideration. Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, No. 04-cv-1621, 2005 WL 1377853, at *9 (S.D.N.Y. June 9, 2005) ("Since the Winston test is designed to determine if a settlement agreement is binding absent a formally executed agreement, it would be a strange test if the fourth factor always favored finding no agreement on the ground that settlement agreements usually are written."). Rather, the correct question is "whether the settlement agreement terms are sufficiently complex or involve long time periods, such that there should be a formal writing." Id. In this case, the terms are very simple, involving in essence only a single monetary payment. See In re Estate of Brannon v. City of New York, No. 14-cv-2849, 2016 WL 1047078, at *3 (S.D.N.Y. Mar. 10, 2016). Moreover, the fact that there was a writing — even an informal

one — further counsels in favor of finding a binding agreement. Hostcentric, 2005 WL 1377853, at *9-10.

Three of the four Winston factors support the finding that the parties had reached an enforceable agreement as of McLellan's May 12, 2022, 8:35 p.m. email. Consequently, at that point, there were objective manifestations of a meeting of the minds, and the parties had an enforceable agreement. McLellan's email sent several hours later stating that an "implicit" term of the deal was that the plaintiff would not re-apply to be a member of the USPA was an attempt to add a new term to the agreement. Because the plaintiff did not assent to that term, it is not part of the parties' agreement. See Murphy, 32 F.4th at 153.

For these reasons, the motion to enforce the settlement agreement is **granted**.

### III.

The plaintiff seeks an award of attorney's fees for the time expended drafting the motion for enforcement of the settlement agreement. However, under Federal Rule of Civil Procedure 54(d)(2)(B)(ii), a motion for attorney's fees must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." Neither the plaintiff's motion nor his memorandum of law in support of the motion identifies any legal basis for such an award, which is a

11

sufficient basis to deny the motion for attorney's fees. <u>See</u>

<u>Arcari v. 46th St. Dev. LLC</u>, No. 10-cv-3619, 2011 WL 832809, at

*7 (S.D.N.Y. Mar. 2, 2011). In reply, the plaintiff argues that

attorney's fees are warranted because the defendant acted in

"bad faith, vexatiously, and wantonly." ECF No. 40 ¶ 28. But the

Court need not consider arguments raised for the first time in

reply, <u>see</u> <u>Aviva Trucking Special Lines v. Ashe</u>, 400 F. Supp. 3d

76, 80 (S.D.N.Y. 2019), and the argument in any event is without

merit. <u>See</u> <u>Hostcentric</u>, 2005 WL 1377853, at *10 (collecting

cases). The motion for attorney's fees is therefore **denied.**

### CONCLUSION

The Court has considered all of the arguments of the

parties. To the extent not specifically addressed above, the

arguments are either moot or without merit. For the foregoing

reasons, the motion to enforce the settlement agreement is

**granted,** and the motion for attorney's fees is **denied.**

The Magistrate Judge should supervise the execution of the

settlement agreement and the dismissal of this case in

accordance with the settlement agreement.

**SO ORDERED.**
**Dated:    New York, New York**
**          November 29, 2022**

_____
      John G. Koeltl
**United States District Judge**