EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK
-------------------------------:

YURI GARMASHOV,                 : Case No.: 21-cv-4917

                 Plaintiff, :

      v.                         :

UNITED STATES PARACHUTE          :

ASSOCIATION, INC.,              : New York, New York

                 Defendant. : May 3, 2023

-------------------------------:



        TRANSCRIPT OF STATUS CONFERENCE HEARING

          BEFORE THE HONORABLE ONA T. WANG

           UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

For Plaintiff:         CHALMERS, ADAMS, BACKER & KAUFMAN
                       BY:  Alex B. Kaufman, Esq.
                       11770 Haynes Bridge Road
                       Alpharetta, Georgia 30009

For Defendant:         WINGET SPADAFORA & SCHWARZBERG LLP
                       BY:  Kenneth A. McLellan,Esq.
                            Keith Roussel, Esq.
                       45 Broadway - 32nd Floor
                       New York, New York 10006


                       ALSTON & BIRD, LLP
                       BY:  STEVEN CAMPBELL, ESQ.
                       90 Park Avenue
                       New York, New York 10016


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

    AMM TRANSCRIPTION SERVICE - 631.334.1445
```

PROCEEDINGS

1            THE DEPUTY CLERK:  This is 21-cv-491;

2   Garmashov versus United States Parachute

3   Association, Inc.

4            Counsel, please state your appearances

5   for the record.

6            MR. KAUFMAN:  Good afternoon, Your Honor.

7   My name is Alex Kaufman, on behalf of Mr. Garmashov.

8            THE COURT:  Good afternoon.

9            MR. McLELLAN:  Good afternoon, Your

10  Honor.  My name is Kenneth A. McLellan.  I'm with

11  Winget Spadafora & Schwartzberg, representing United

12  States Parachute Association, Inc.

13            MR. ROUSSEL:  Good afternoon, Your Honor.

14  My name is Keith Roussel.  I'm from the law firm of

15  Winget Spadafora & Schwartzberg, also here on behalf

16  of the United States Parachute Association Corp.

17            THE COURT:  Okay.

18            MR. CAMPBELL:  Good afternoon, Your

19  Honor.  Steven Campbell from the law firm Alston &

20  Bird, here on behalf of USPA.  This is our client,

21  Your Honor.

22            THE COURT:  Okay.  Would you like to

23  introduce your client?  Or you can introduce

24  yourself.

25            MR. BERCHTOLD:  How are you doing?

PROCEEDINGS

1    Albert Berchtold on behalf of the United States
2    Parachute Association.
3              THE COURT:  Okay.  Oh, so you're -- we
4    spoke on the phone, right, in some of the
5    pre-settlement calls?  Was that with you?
6              MR. BERCHTOLD:  Yes, that was with me,
7    Your Honor.
8              THE COURT:  Okay.  All right.  No, no,
9    no.  It's okay.  We're here for a status conference.
10   We are on the record, and I envision at the end of
11   this conference asking you all to get a copy of the
12   transcript and share the cost 50/50.  I'm going to
13   put that right out there.  If we end up talking
14   about confidential settlement issues, I would expect
15   you to make a joint motion to seal the transcript,
16   but I do want a full and complete transcript here
17   because of the considerable acrimony in the history
18   of this case.
19             All right.  Bring me up to speed.  I
20   thought that Judge Koeltl had decided the motion to
21   enforce the settlement and we were done.  Does
22   somebody want to talk to me?  I guess we'll start
23   with Mr. Kaufman if somebody wants to talk to me
24   about what's happened since then.
25             MR. KAUFMAN:  Well, Your Honor, our

PROCEEDINGS

1    position is that you're spot on.  The motion to

2    enforce was ordered on November 29, 2022.  Payment

3    has yet to be made.  The judge was clear.  The

4    settlement terms were clear and unambiguous.  The

5    $150,000 payment changed from mutual general

6    releases, and as well as mutual confidentiality and

7    no additional wrongdoing.

8            We pre-signed a mutual dismissal with

9    prejudice, provided wiring instructions.  Obviously,

10   there's nothing else in the order.  Surely, the

11   judge then ordered us to then go ahead and come up

12   with a settlement agreement.  We did prepare what we

13   thought was just those clear terms.  It just never

14   happened.  We attempted to placate defendant's

15   counsel who wanted a more robust settlement

16   agreement.  Their initial draft to us included terms

17   that were far outside of what -- the clear

18   parameters of the enforcery.  Our view is an

19   agreement was made.  The judge affirmed that that

20   agreement was made.

21           And I think it's important to note, Your

22   Honor, that initial agreement from the mediation was

23   from May 12, 2022, you know, so we're here a year

24   later.  Our view is that the attempts to get us a

25   settlement agreement that both parties were

PROCEEDINGS

1   comfortable with was something that was unnecessary.
2   But if that's what they wanted to be attempted
3   (indiscernible) to do that.  Such things that were
4   put in their drafts included California releases.
5   We're here, obviously, under the laws of the State
6   of New York.  They attempted to require Mr.
7   Garmashov to have the document notarized as a
8   precondition.  That was impossible for Mr.
9   Garmashov.  He's in a city in Russia that is 16
10  hours or so drive to Moscow.  There's reasons for
11  him not to go to Moscow right now, as the Court is
12  undoubtedly aware.
13          Additionally, if he did have to get
14  notarized -- of course, not a precondition, nor any
15  term that's in the order that Judge Koeltl
16  codified -- it would require him to have had the
17  entire agreement translated by a certified
18  translator into English and at considerable time and
19  expense.  Again, unnecessary parameters.
20          There were parameters put forth in some
21  of their drafts that included joint motions to have
22  the agreement sealed, as Judge Koeltl had released
23  the settlement terms.  Again, additional
24  requirements.
25          And, you know, basically, if you just

PROCEEDINGS

1    took from that November date of Judge Koeltl's

2    order -- I believe it was November 29th -- and ran

3    the interest plus the additional attorney's fees and

4    costs that we had to incur on behalf of

5    Mr. Garmashov, which to date are $27,807.59.  Our

6    view is this was clear and unnecessary.  You know,

7    defense counsel's claims, oh, you know, we reached a

8    deal with (indiscernible) is just not true.

9             While that agreement contained most of

10   the terms, one of the issues, of course, was now

11   that Mr. Garmashov had incurred significant cost and

12   was deprived of the use of that money, and has been

13   living off credit cards and incurred additional

14   expenses, as I mentioned, attorney's fees and costs

15   of travel.  I am barred in New York, but I reside in

16   Atlanta.  We -- you know, that interest rate, Your

17   Honor, is $19.85 a day, at least based upon the

18   calculations put forth in my April attorney's fees

19   affidavit.

20             Even if we did reach an agreement in

21   February, which we don't consider that we did, you

22   know, there's a provision in that last agreement,

23   again, requiring a California release, which, as the

24   Court knows, is different than a general release

25   here in the state of New York.  I'm not barred in

PROCEEDINGS

1   California.  We'd have to get additional counsel so
2   he can review that.  Again, it's not part of the
3   original initial settlement terms, and that
4   provision not agreeable to Mr. Garmashov.
5           The result is he's been deprived, really,
6   for a year of that money.  And -- but our
7   calculations were from the order date.  And we
8   believe that defense counsel could have done many
9   things.  If there was such a dispute, you could ask
10  the Court for a clarification of what the word
11  "execute" means, which is what Judge Koeltl told you
12  you could execute.  The word "execute" means to go
13  forth and do it, which is -- again, the court found
14  there was an agreement.  There was no order to agree
15  to a more robust writing, which, of course, is
16  something that I believe -- I'm not in a position to
17  tell district judges what they can and can't do, but
18  I don't believe that's something that would have
19  been in his purview or his intent.
20          They could have put the money in the
21  registry of the court to mitigate this.  They could
22  have put it in our trust account it's subject to.
23  They didn't do that.  And so the idea that they have
24  tried to comply with the letter or spirit with the
25  order sounds falsely.  And the reality is,

PROCEEDINGS

```
 1    Mr. Garmashov has now come to New York twice.  Of
 2    course, we canceled last time at the last moment,
 3    and I know that they traveled as well.  But, again,
 4    those costs were incurred by Mr. Garmashov.  And,
 5    you know, he -- unfortunately, that's the position
 6    he's in.  And we're here to try to get recompense
 7    for that additional 20 -- almost $28,000 in
 8    additional costs and damages that he's incurred
 9    since the day of the order.
10              So that's why we're here.  We've
11    attempted to -- we've made offers.  I'm not getting
12    into settlement conversations, but I can tell you
13    that the -- there was no counter involved of any
14    substance.  And, you know, their position was wait
15    and see what Your Honor would do.  We find that
16    unfortunate.  There were offers, well, we'll pay the
17    money, but we'll have to deal with this.
18              I felt uncomfortable, given the
19    relationship and the history of signing anything
20    that had a mutual general release, even with a
21    carve-out to have this issue heard.  Again, the
22    first time that was offered was February 22nd.  And
23    I believe, frankly, that's just too little too late.
24              Again, they could have sent the money to
25    (indiscernible) punish Mr. Garmashov for whatever
```

PROCEEDINGS

1   reasons are out there.

2           I have full settlement authority.  If the

3   Court does, you know, order us to come to resolve

4   this, I can contact Mr. Garmashov --

5           THE COURT:  Okay.

6           MR. KAUFMAN:  (indiscernible).

7           THE COURT:  All right.  Great.  Thank

8   you.

9           So just so I'm clear -- and this is a

10  question for everybody, all the counsel --

11  Judge Koeltl's finding is that the e-mail, the

12  8:35 p.m., May 12, '22 e-mail, is when there is the

13  agreement, and it's just the terms that were agreed

14  to and confirmed in the 8:35 p.m. e-mail; is that

15  right?

16          MR. KAUFMAN:  Yes, Your Honor.

17          THE COURT:  Okay.  What about from

18  defendants?

19          MR. McLELLAN:  Well, I believe that's

20  correct, Your Honor.  May I respond to Counsel's

21  presentation?

22          THE COURT:  I'm not -- briefly.  But I

23  would like to say I envision us talking about this

24  in two separate pieces.  Number one is I think it's

25  clear Judge Koeltl -- Judge Koeltl's ruling is quite

PROCEEDINGS

1    clear about the motion to enforce the settlement
2    agreement.  And the settlement agreement is that
3    8:35 p.m. e-mail, right?  It doesn't include any
4    other terms.
5              I think a separate issue is what's
6    happened since November 29, 2022, which I would
7    probably prefer to address after we have an -- after
8    we come to understand why the settlement hasn't been
9    consummated.
10             MR. McLELLAN:  I can explain that, Your
11   Honor, if I would have -- could have the
12   opportunity, please.
13             THE COURT:  Go ahead.
14             MR. McLELLAN:  The order calls for the
15   Magistrate Judge, Your Honor, to supervise the
16   execution of a settlement agreement.  The --
17   Judge Koeltl's order calls for the execution of a
18   settlement agreement.  You refer to an e-mail, Your
19   Honor, but that doesn't contain the language of a
20   general release.  It doesn't contain a signature.
21   And our interpretation of the order is that we were
22   entitled to that.
23             Counsel, in an e-mail that he sent to us
24   right after the order was issued from Judge Koeltl
25   initially said, we'd like you to wire us $150,000,

PROCEEDINGS

```
1    but let us know if you have a different view,
2    showing that there was at least two interpretations
3    of the order possible.  That wasn't our
4    interpretation of the order, that Judge Koeltl's
5    order required us to immediately wire $150,000 to
6    the order of plaintiff's counsel.  We look to have a
7    settlement agreement.
8              Counsel is referring to the California
9    release issue.  I don't want to get into that in too
10   much detail, but I would only point out that this is
11   the second lawsuit referable to this incident,
12   meaning the second lawsuit having to do with
13   Mr. Garmashov's membership having been terminated.
14   The first lawsuit was brought in California by
15   Mr. Kaufman's firm at the time.  There is some law
16   in California that raised concerns with my
17   principals, and we simply wanted to address that in
18   the release.  I'm -- there should be no reason that
19   Counsel should have any concern about that if the
20   intent is for this to be the end of the lawsuit and
21   my clients to be released, which that should be what
22   happens after my client issues payment.
23             The rest of the issues that happened in
24   terms of the settlement agreement were routine
25   issues that happen when you go back and forth with
```

PROCEEDINGS

```
 1   counsel.  There was nothing unusual.  But we did
 2   come to the point where, unfortunately, Counsel
 3   threaten -- began to threaten us and use more
 4   threatening language, which is when we wrote a
 5   letter to Your Honor on February 7th.  And then
 6   Your Honor immediately ordered a settlement
 7   conference to be held in April, which was
 8   subsequently adjourned to today.
 9           But the issue is, all of the billing that
10   counsel generated that's attached to his motion to
11   hold my clients in contempt -- which is without
12   merit -- was billing that was incurred after we
13   requested a conference.  Counsel didn't need to do
14   that.  And, thereafter, we worked diligently.  And
15   recently who appeared in the case, Mr. Campbell of
16   Alston & Bird was of great assistance to us.  We
17   worked on the settlement agreement.
18           Counsel now says that he disagrees that
19   an agreement has been reached.  But I'm here to
20   report to the Court, happily, that it's our
21   understanding -- and we have e-mails to that
22   effect -- that the agreement language that we have
23   come to with Mr. Kaufman mirrors the terms of the
24   order of Judge Koeltl.  And I understand that
25   Mr. Garmashov, if he's living on credit cards, if
```

PROCEEDINGS

1    he's having that type of problem, if he signs this
2    agreement that Mr. Kaufman has already agreed to, he
3    could simply get paid within three days after that.
4    So I'm not sure why he wants to do that, why he
5    needs to live off credit cards.
6              The other issue is the terms that are in
7    the present settlement agreement are innocuous
8    terms, and we feel that Mr. Kaufman -- we understand
9    that he believes the best way to protect his client
10   is to make a motion for contempt.  I have to be
11   honest with you, Judge, in 25 years of practice,
12   I've never had somebody make a motion for contempt
13   before in this situation, especially when there's a
14   settled case.  And we now have a settlement
15   agreement.  It's simply not necessary, Judge.  And
16   it's racked up a lot of damages that Counsel didn't
17   need to rack up.  He brought a bazooka to kill a
18   fly.  It certainly wasn't necessary.
19             And Counsel indicates that there were
20   negotiations.  I don't want to get into the detail
21   of the negotiations, but when we were just outside,
22   Counsel's offer was the 100 percent of the amount of
23   the claim damages on contempt.  That's not
24   negotiation in my book, Judge.
25             Thank you for listening.  And I wanted to

AMM TRANSCRIPTION SERVICE - 631.334.1445

PROCEEDINGS

1    note that -- if I may, Mr. Campbell may have

2    something to add.  He's recently appeared in the

3    case.

4                 THE COURT:  Go ahead.

5                 MR. CAMPBELL:  Thank you, Your Honor.

6                 Only one thing I wanted to add is that,

7    prior to the order being issued, the parties

8    understood that if a term -- if the term sheet was

9    agreed to, if there was an agreement reached at the

10   mediation, that there would be a long form

11   settlement agreement memorializing those terms.  And

12   we -- this is in the record, but -- so the term

13   sheet, as you pointed out earlier, what Judge Koeltl

14   said were the terms of the agreement -- when

15   plaintiff's counsel, Mr. Kaufman, e-mailed that term

16   sheet to Mr. McLellan, he stated that if you -- if

17   your client signs the term sheet -- now, I quote --

18   "We can move forward and we can render a final draft

19   agreement to you."

20                And then also in the record is an e-mail

21   that Mr. McLellan sent to the mediator stating, "The

22   USPA will require an agreement with a

23   confidentiality provision and no admission of

24   liability, among other standard terms."

25                I only say that because in interpreting

AMM TRANSCRIPTION SERVICE - 631.334.1445

PROCEEDINGS

1  the order from Judge Koeltl, it was our

2  understanding that both parties wanted to put that

3  agreement into writing.  And so it's extremely

4  reasonable that USPA took that view.

5            And, in fact, while plaintiff, you know,

6  reserved the right to object to that approach,

7  plaintiff's counsel did engage in negotiating a

8  settlement agreement.  And so that's what the

9  parties endeavored to do.  They were unable to, for

10  a couple of months, get there, but then by February

11  22nd, they did reach an agreement, which, as Mr.

12  McLellan stated, plaintiff's counsel said mirrors

13  Judge Koeltl's order.

14            So we have a settlement agreement that

15  everyone agrees has the terms that need to be in

16  there, nothing more, nothing less.  And as soon as

17  that's signed, USPA will pay within three days.

18            THE COURT:  Now, what I heard from

19  Mr. Kaufman -- and he's shaking his head right

20  now -- is that the February 22nd -- the February

21  settlement agreement may mirror the terms of the

22  term sheet, but it adds certain things, certain

23  requirements that are unacceptable and that were not

24  on the term sheet, right?

25            MR. CAMPBELL:  No.  Well, that's -- I

PROCEEDINGS

1   disagree, Your Honor.  The --

2           THE COURT:  Do you want to -- does

3   somebody want to hand up the draft February

4   settlement agreement and the term sheet?  If you

5   have an unmarked --

6           MR. McLELLAN:  I have the confidential

7   agreement that in my -- according to me and

8   according to e-mail correspondence we had with

9   Mr. Kaufman, this is -- right, what I have right

10  here is what mirrors the terms of Judge Koeltl's

11  agreement.  I'll be happy to hand it up.  I don't

12  know if it's a court officer here or --

13          THE COURT:  My law clerk can take it.

14          MR. McLELLAN:  May I approach or -- I

15  don't want to --

16          THE COURT:  Yes.

17          MR. CAMPBELL:  Your Honor, if I may just

18  add that -- so we sent this new agreement.  That's

19  when I came into the case.  I took a look at it, and

20  I said, you know, let's just start from scratch.  I

21  took Judge Koeltl's order in one hand.

22          THE COURT:  When did you come into the

23  case again?

24          MR. CAMPBELL:  Right.  So it was after --

25  I don't remember the exact date.  I didn't make an

PROCEEDINGS

1  appearance in the case until much later, about a

2  month after, I think, but it was after the motion

3  for contempt had been filed.  It was about a week

4  before, I think -- a few days before I sent the new

5  agreement, and that was February 20th.

6              THE COURT:  So this is -- what I'm

7  holding in my hand right now that Mr. McLellan has

8  handed up is what you're all talking about as the

9  February agreement?

10              MR. KAUFMAN:  Yes.

11              MR. CAMPBELL:  Yes.

12              THE COURT:  Okay.

13              MR. McLELLAN:  That's the February 22nd

14  agreement, Judge.

15              THE COURT:  Okay.

16              MR. CAMPBELL:  We sent that on

17  February 20th, and then plaintiff's counsel came

18  back --

19              THE COURT:  I don't -- I'm not into --

20  I'm going to cut with a very -- I'm not even going

21  to call it a knife.  I'm going to cut with a machete

22  right now, okay, because this case needs to be over.

23  You all need to go your separate ways, and you need

24  to move on, and you need to do this, and

25  Mr. Garmashov needs to get his money, all right.

PROCEEDINGS

1          So I'm seeing this settlement and
2    release.  And, Mr. Kaufman, you're saying that while
3    the -- let me paraphrase in words that may be more
4    acceptable to defendants.
5          You're saying that the February 22nd
6    agreement contains the terms from the term sheet,
7    but it also adds additional terms.  And those added
8    additional terms or requirements are what are
9    unacceptable.
10          MR. KAUFMAN:  Yes, Your Honor.  You're
11    spot on.
12          THE COURT:  Okay.
13          MR. KAUFMAN:  The California -- the
14    language is in that version, and it still hasn't
15    addressed -- it reserves the right for us to have
16    this contempt issue, which the idea that we only
17    incurred attorney's fees starting after -- with the
18    filing is just inaccurate.  The Court's got the
19    record of the billing in the record.
20          THE COURT:  All right.  What's -- does
21    somebody have a copy of the term sheet they can hand
22    up?
23          MR. KAUFMAN:  Yes, Your Honor.  I have it
24    digitally from the court -- I have the court's
25    actual order, if that would please the Court.

PROCEEDINGS

```
 1                THE COURT:  Wait, but that -- does that
 2     have the term sheet in it?
 3                MR. KAUFMAN:  I thought you were
 4     suggesting the -- what I e-mailed over, where they
 5     agreed in May; May 12th.
 6                THE COURT:  Yes.
 7                MR. KAUFMAN:  It's attached -- he --
 8     Judge Koeltl puts it directly in his order.
 9                THE COURT:  Oh, okay.  Where is it in the
10     order?
11                Does anybody have a copy of the term
12     sheet?
13                MR. KAUFMAN:  (indiscernible).
14                THE COURT:  Oh, that's that block quote
15     at the top of page 3 of ECF 63?
16                MR. KAUFMAN:  Yes, Your Honor.  That's
17     right out of the e-mail, and then we signed it.
18                MR. CAMPBELL:  I have a marked-up
19     redacted copy, if you want to see the actual --
20                THE COURT:  Yeah, I'd like to see an
21     actual unredacted...
22                MR. CAMPBELL:  I think this is -- this is
23     it, right?
24                MR. McLELLAN:  Yes, that's --
25                MR. CAMPBELL:  My apologies for the
```

PROCEEDINGS

1   highlighting.

2               THE COURT:  Okay.  That's okay.

3               Okay, let me see.  Well, the highlighting

4   or the --

5               MR. CAMPBELL:  This was -- this is what's

6   in the -- sorry, Your Honor.  This is what was in

7   the record.  This is --

8               THE COURT:  The redaction, yeah.  No,

9   that's my problem.  So we don't have -- nobody has

10  an unredacted --

11              MR. KAUFMAN:  Your Honor, if I can pull

12  my e-mail for a second, I'll be able to --

13              THE COURT:  Okay.  Yeah.

14              MR. KAUFMAN:  (indiscernible).

15              THE COURT:  Okay.  Here, you can have

16  this back.

17              And so what will happen after you get a

18  copy of the transcript is that the transcript will

19  be available to you all for redaction, and then

20  you're going to redact maybe -- probably the

21  numerical amounts, or we'll redact certain sections.

22  You're going to agree on a section to redact, okay,

23  before it gets filed on the docket, or we may end

24  up -- depending on what this transcript looks like,

25  we may just end up sealing the entire transcript.

PROCEEDINGS

```
 1              MR. KAUFMAN:  Your Honor, I apologize.
 2    It looks like my firm only lets my e-mail go back to
 3    November of 2022 (indiscernible).
 4              THE COURT:  Oh, dear.
 5              MR. KAUFMAN:  But we -- it is quoted.
 6    Like I said, it is quoted in there.  And those are
 7    the only terms there, and then Mr. Garmashov signed
 8    it.  We can send it over.  But I think the Court
 9    accurately describes the -- and I can probably find
10    the -- if I go into the PACER, I can find it as an
11    attached exhibit for our motion to enforce.
12              THE COURT:  Okay.  All right.  So when
13    the USPA's offer went up to -- redacted --
14    membership was removed from the equation.
15    "Plaintiff's counsel then took the stance that only
16    a higher offer would be considered.  We and the USPA
17    rightfully consider that as an abandonment of the
18    request for membership."
19              Oh, I see.  So the -- wait.  So the case
20    would settle for a specified sum of 150,000 with
21    mutual dismissals with prejudice, mutual general
22    releases of all claims and allegations, mutual
23    confidentiality as to the terms of the agreement,
24    but this is -- is this -- this order is unredacted,
25    right?  So --
```

PROCEEDINGS

1          MR. KAUFMAN:  Yes, correct, it's -- to

2     the world at this point, which was also our view of

3     why it seemed -- and, of course, it means the

4     general releases would be the same thing as mutual

5     dismissal with prejudice, which is what we produced

6     and signed and gave to counsel immediately to hold

7     until we got the money wired.

8          THE COURT:  Right.  So that -- that set

9     of terms -- "case would settle for a specified sum

10     of 150,000 with mutual dismissals with prejudice,

11     mutual general releases of all claims and

12     allegations, mutual confidentiality as to the terms

13     of the agreement, and no admission of liability by

14     any party" -- those are the terms on the term sheet.

15          MR. KAUFMAN:  That was it.  It was just

16     four bullet points, Your Honor, and our client

17     signed it, and it was signed "mediation settlement

18     agreement."

19          THE COURT:  Okay.  And that's what was

20     handed up that -- where all the bullet points were

21     redacted?

22          MR. KAUFMAN:  Yeah.  That's why I said

23     the Court properly listed it.  They said we had an

24     agreement in principle.  That was it.  But at this

25     point, it's -- you know, I can't do anything about

PROCEEDINGS

1    the confidentiality.  Mutual general releases,
2    again -- I'm going to take out your new microphone,
3    Your Honor.
4          Mutual general releases would be the same
5    as mutual dismissals.  So our view is very simple --
6    and we provided the wiring instructions.  So wire
7    the money.  You have the mutual dismissals with
8    prejudice.  We're done.
9          THE COURT:  Okay.
10         All right.  Mr. McLellan?
11         MR. McLELLAN:  Yes, Your Honor.
12         THE COURT:  Yeah, what did you want to
13    say?
14         MR. McLELLAN:  I just wanted to add --
15    Counsel did refer, unfortunately, to the dollar
16    amount of the settlement in his motion to enforce
17    the settlement, so that cat got out of the bag.  But
18    we still would like to have confidentiality in our
19    agreement.  And it is in this --
20         THE COURT:  Even though the entire terms
21    are in a court order, ECF 63, and there was no
22    timely motion made to seal for that?
23         MR. McLELLAN:  Your Honor, I don't think
24    counsel has any objection to there being
25    confidentiality.

PROCEEDINGS

```
 1              THE COURT:  No, I don't think so either,
 2    but I -- it's a little bit -- it's a -- the horse is
 3    gone.  The barn door is wide open.  It has been wide
 4    open since last November.
 5              MR. McLELLAN:  I understand --
 6              THE COURT:  What's your point?  And by
 7    the way, Judge Koeltl would probably not be willing
 8    to redact his order.  So regardless of
 9    confidentiality at this point going forward, sure,
10    you can agree to confidentiality, but it's all right
11    here in ECF 63.
12              MR. McLELLAN:  Judge, I understand that.
13    We are not disputing that issue any longer.
14              THE COURT:  Okay.
15              MR. McLELLAN:  We understand that it --
16    that the dollar amount was listed in the order, and
17    we're not -- we don't want to go back and revisit
18    that.  We want to go forward.
19              The only issue is, is that we did want to
20    point out, in -- although this case is pending in
21    New York, there is an action brought under
22    California law in the complaint.  It's in Count 4.
23    It's violation of California Business and
24    Professional Code § 17200, which is what raised
25    concerns on my client's side.
```

PROCEEDINGS

```
 1              THE COURT:  Okay.  Sit down, please.
 2              Mr. Kaufman, tell me about the California
 3    case.  That's another case where your client's a
 4    plaintiff?
 5              MR. KAUFMAN:  Well, Your Honor, we
 6    originally filed the action in California.  We
 7    dismissed it and decided to bring it here for
 8    logistical reasons.  Mostly -- mainly because I'm
 9    barred here and I switched --
10              THE COURT:  Okay.  So why are we talking
11    about a California case?  Why are we talking about
12    California law?  Why do we care?
13              MR. McLELLAN:  Judge?
14              THE COURT:  Yeah, go ahead.
15              MR. McLELLAN:  It's just -- no.  What I'm
16    referring to is the California statute that is
17    raised in this case that's in New York.  That's
18    this -- what I just read to you is Count 4 of the
19    complaint in this court, which is referable to the
20    California Business and Professional Code § 17200,
21    which, again, is what raised concerns on my --
22              THE COURT:  If you're dismissing this
23    case with prejudice, why does it matter?
24              MR. McLELLAN:  That would be the question
25    I'd pose to Mr. Kaufman, why does he care --
```

PROCEEDINGS

```
1              THE COURT:  And why does it -- why is it
2     in here?  I have a mind -- here's a couple things; I
3     have a mind to just oversee you all signing -- and
4     Mr. Kaufman can sign on behalf of his client.  We
5     can get his client on the phone, as I understand,
6     ensure verbally that he has full authority to sign
7     on his behalf, and we can read the agreement to him.
8     But we can do this two ways, I propose.
9              One is we can take a clean copy of
10    ECS 63, bracket the language right there.  You all
11    sign it.  That's your settlement agreement.  Or we
12    can take those terms, type it up into four bullets
13    again, and you all sign it again.  What do you want
14    to do?
15             MR. McLELLAN:  Your Honor, may I confer
16    with my client and co-counsel on this?
17             THE COURT:  Sure.
18             MR. McLELLAN:  May we --
19             THE COURT:  Yeah.  You know what?  Let's
20    take a break.  You can go into the jury room, have a
21    conversation, and then just come out when you're
22    ready; okay?
23             MR. McLELLAN:  Thank you, Judge.
24             (A recess was taken.)
25             THE COURT:  All right.
```

PROCEEDINGS

1              MR. McLELLAN:  Thank you, Your Honor, for
2     the opportunity to confer.  I've spoken with our --
3     my client.  He's willing to execute the order that
4     Judge Koeltl issued, which becomes our settlement
5     agreement.  And then he is willing to, when he
6     returns to his office, which is in the Washington,
7     D.C. area -- tomorrow he will be back in his office.
8     He can issue a check to Yuri Garmashov, which will
9     be overnighted to Mr. Kaufman's office.
10              THE COURT:  Any thoughts, Mr. Kaufman?
11              MR. KAUFMAN:  I'm fine with that, Your
12     Honor.  That's all we wanted.  I do, obviously, want
13     to address the contempt issue, the additional
14     damages Mr. Garmashov incurred for such a simple
15     solution.
16              THE COURT:  Okay.
17              MR. KAUFMAN:  But we have no problem.  I
18     have authority.  I just texted him.
19              THE COURT:  Okay.  Why don't we do this,
20     why don't we print a clean copy of ECF 63 because I
21     wrote on the one that I have, unless one of you has
22     a clean copy.  And why don't we just have you all
23     sign, including Mr. Kaufman, even though I
24     understand that Mr. Garmashov had already signed the
25     previous term sheet.  We'll just have you all sign

PROCEEDINGS

1      on the same document.

2                  MR. KAUFMAN:  No problem.

3                  THE COURT:  Is that all right?  Okay.

4                  Does defense counsel have any issue at

5      all about whether Mr. Kaufman has the authority to

6      sign on behalf of his client?

7                  MR. CAMPBELL:  If he represents that he

8      does, then we --

9                  THE COURT:  Okay.  All right.  So just so

10     we're all clear, the language of the term sheet

11     appears at the bottom of page 3 of ECF 63, right,

12     that starts with, that the only terms delineated in

13     the draft were that, quote.  And it goes through to

14     the closed quote, right?

15                 MR. KAUFMAN:  Yes, Your Honor.  And just

16     for reference in the record, Exhibit 5 at

17     Document 37, which is our motion to enforce, had

18     the -- it was titled "Mediation Settlement Agreement

19     Terms and Conditions."  That's where Judge Koeltl

20     took those verbatim.  It's just redacted in the

21     public forum because we were trying to abide by our

22     end of the confidentiality that it needed the Court,

23     of course (indiscernible) --

24                 THE COURT:  He just decided that he would

25     put them in the order.

PROCEEDINGS

1           MR. KAUFMAN:  Yes.

2           THE COURT:  Okay.  Let me just check to

3   see if there's an unredacted version of that visible

4   to court users.

5           So how did you do this when you made the

6   motion before Judge Koeltl; did you send unredacted

7   hard copies to him?

8           MR. KAUFMAN:  I believe that's what we

9   did because we tried to --

10           THE COURT:  Okay.

11           MR. KAUFMAN:  Or we maybe e-mailed his

12   staff attorney, Your Honor.

13           THE COURT:  Okay.

14           MR. KAUFMAN:  I'm not at the same firm as

15   what we did at the time, so --

16           THE COURT:  Okay.

17           MR. KAUFMAN:  -- I don't have records.

18   And I don't have that file because that firm got hit

19   with a cyber attack, so we're -- that's the

20   situation.

21           THE COURT:  All right.

22           MR. KAUFMAN:  (indiscernible).

23           THE COURT:  All right.  So we'll go

24   forward with this somewhat unorthodox view.  So I

25   guess I'll mark the section in red ink and point

PROCEEDINGS

1   that out as the settlement, okay.  This will become

2   the settlement agreement.

3            All right.  So we're going to hand that

4   down, and I suppose you can each sign it.

5            MR. KAUFMAN:  Okay, Your Honor.  And for

6   the record, I'm signing now on behalf of

7   Mr. Garmashov, with authority as his attorney, as

8   well as I'll sign it in my capacity as well as

9   counsel of record.  And I'm going to sign it with

10  blue ink.

11           THE COURT:  All right.  Thank you.

12           MR. KAUFMAN:  Your Honor, may I hand it

13  over to opposing counsel?

14           THE COURT:  Please do.

15           MR. McLELLAN:  Thank you, Counsel.

16           May I present this to my client for a

17  signature?

18           THE COURT:  Please do.

19           MR. McLELLAN:  I have a black-ink pen for

20  Mr. Albert Berchtold, the executive director of the

21  United States Parachute Association, to sign.

22           THE COURT:  All right.  Thank you.

23           And please print your names under each of

24  your signatures if you haven't done so already.

25           MR. McLELLAN:  Your Honor, before the --

PROCEEDINGS

1   excuse me.  Before the Court, I'm signing my name as
2   counsel at page 3 in black ink at this time.
3                THE COURT:  Okay.
4                MR. McLELLAN:  I finished signing it,
5   Your Honor.
6                THE COURT:  All right.  Thank you.
7                All right.  My law clerk is going to just
8   take it so I can just take a look at it, and then --
9   actually, just the page -- since the opinion order
10  is multiple pages, but the settlement agreement is
11  contained on that single page, 3, what we're going
12  to do is we're going to scan that page in color
13  because that page becomes your settlement agreement.
14  And then we'll either -- we can print out black and
15  white copies for you, and we can also e-mail you the
16  color copy; okay?
17               MR. KAUFMAN:  Thank you.
18               MR. McLELLAN:  Thank you, Judge.
19               THE COURT:  All right.  Hold on just
20  while we get that done.
21               (Pause in proceedings.)
22               THE COURT:  All right.  Just a minute
23  while we wait on this.
24               All right.  So my law clerk is going to
25  take the agreement, scan just the page 3.  We'll

PROCEEDINGS

1    e-mail copies to you.  We'll bring you hard copies

2    that are black and white, okay, so you each will

3    have a copy to take with you.

4              Just a minute.

5              MR. KAUFMAN:  Your Honor, just as a

6    housekeeping matter, since I've switched firms, may

7    I put on the record I'm handing my accurate mailing

8    address via business card to counsel and his client?

9              THE COURT:  This is the one that's

10   attached here?

11             MR. KAUFMAN:  Yes, Your Honor, that's

12   correct.

13             THE COURT:  This is new firm?  Okay.

14             MR. KAUFMAN:  Chalmers, Adams, Backer &

15   Kaufman.

16             THE COURT:  Okay.  Yeah.

17             MR. KAUFMAN:  Thank you.

18             MR. McLELLAN:  Thank you.

19             THE COURT:  All right.  On to -- the

20   motion for contempt is -- it's fully briefed, right?

21   It's been fully briefed?

22             MR. KAUFMAN:  Yes, Your Honor.

23             MR. McLELLAN:  Yes, Your Honor.

24             THE COURT:  All right.  The Court could

25   construe that -- we're not going to decide it now,

PROCEEDINGS

1   okay, but I do want to reach -- try to reach some

2   kind of closure on that since we do now have a

3   signed settlement agreement.

4         Is -- we could construe it as a motion

5   for attorney's fees.  Is there -- or is there

6   another -- you know, we could invite plaintiff to

7   withdraw it.  I could see potentially some reasons

8   why they might be resistant, but -- you know, or is

9   there briefing or supplemental briefing you might

10   want to have -- if we were to construe it as a

11   motion for attorney's fees, is there any

12   supplemental briefing you might want to have in

13   light of the fact that we now have a signed

14   settlement agreement?

15         MR. KAUFMAN:  Your Honor, from the

16   plaintiff's perspective, we don't wish to withdraw

17   that motion.  You know, we've incurred about $28,000

18   in attorney's fees.  The only additional briefing,

19   which would have been an updated affidavit based

20   upon once I return home and what that total time and

21   bill would be.  I'm happy to stand in my place for

22   the Court to give a -- you know, an estimate of what

23   I believe it is on both sides so that we can proceed

24   as of now.  Otherwise it's fully briefed.  And my

25   preference is for -- you know, one is that -- just a

PROCEEDINGS

1    clear understanding that, yes, we've now signed the

2    settlement agreement.  We haven't released these bad

3    faith claims or contempt claims or attorney's fees

4    claims -- however the Court wishes to categorize it,

5    just for clarification.  And my hope would be to

6    minimize any further cost and exposure and expense

7    for Mr. Garmashov so he can move on with his life.

8          So we don't believe we need any

9    additional briefing.  If the Court would want an

10   updated affidavit, I can -- of course, the math

11   is -- math is we put in the interest rate, although

12   I heard the Feds raised it a quarter of a point

13   today, but I don't want to go back to it.

14         THE COURT:  We're not going to go there.

15   Look, I will tell you -- so you had incurred -- your

16   client had incurred about 28,000 in fees and costs

17   since -- up to when?  What's the date range that

18   that covers?

19         MR. KAUFMAN:  Your Honor, that covers and

20   has been in the accurate form since Judge Koeltl's

21   order on November -- I believe it was the 29th,

22   2022, up to and through today.

23         THE COURT:  Through today, the 28,000?

24         MR. KAUFMAN:  Well, the 28,000, exactly,

25   that's through today.  My affidavit was, I believe,

PROCEEDINGS

1  4 or $5,000 less, but, of course, I -- we've had to

2  incur airfare to come here, brief preparing, and

3  then being here in court.

4         THE COURT:  Okay.  Okay.

5         MR. KAUFMAN:  (indiscernible).  And the

6  additional month of the interest, which is about

7  $600 or so.

8         THE COURT:  Okay.  All right.  Go ahead,

9  Mr. McLellan.

10         MR. McLELLAN:  Thank you, Your Honor.  I

11  appreciate the opportunity to be heard, and I

12  appreciate your assistance with the settlement

13  agreement today.

14         The billing I have from counsel begins on

15  February 8, 2023, for the drafting of the motion for

16  contempt.  I don't have billing from earlier than

17  that for Counsel.  With respect, I understand

18  Counsel is from Atlanta, but he brought the case in

19  New York, and there were adjournments that were

20  beyond our control.  We don't believe that our

21  client should be charged for that.

22         And if I could, since Counsel did have

23  the opportunity to submit an affidavit, I would like

24  the opportunity to submit a brief response to that

25  along those lines if counsel is not going to

PROCEEDINGS

```
1   withdraw it.  I certainly don't want to burden the
2   Court, Mr. Garmashov or my own client, for that
3   matter, but if the motion is going to be heard,
4   short brief, and that could be done by next Friday.
5              THE COURT:  Okay.  I anticipate this
6   being on the papers.  I really don't want any of
7   you -- now that we have a signed settlement
8   agreement, I would really prefer that we all be able
9   to move on from this case.
10             And although I don't think it has been
11  referred to me, but -- oh, maybe it has.  I was just
12  looking at the docket header, and my initials are
13  right after Judge Koeltl's, which suggests that it's
14  already been referred, but I would construe it as a
15  motion for attorney's fees.
16             I -- here's what I would suggest, why
17  don't we give it a week for everything to cool down,
18  for money to come in -- (indiscernible due to audio
19  skipping) on the motion for attorney's fees.
20             I think you all have been able to detect
21  by the words I have said and the tone I have used
22  that I would prefer not to have to address it, but I
23  will address it, if need be.
24             The other question I had is, is the
25  February agreement part of the briefing right now?
```

PROCEEDINGS

1                 Mr. Kaufman, you're shaking your head.

2                 MR. KAUFMAN:  As part of the brief --

3     yes.  And just one point of clarification --

4                 THE COURT:  It's in the briefing.  Okay.

5                 MR. KAUFMAN:  And it's in -- and that's

6     part of what the attorney's fees are going back and

7     forth.  And Mr. McLellan Makes an excellent point.

8     The fees that I can show right now are just since I

9     was at my new firm.  The old firm, as I mentioned

10    earlier, had a cyber attack, but we were clearly

11    going back and forth since November.  So this is a

12    low estimate of what these attorney's fees numbers

13    are --

14                THE COURT:  Okay.

15                MR. KAUFMAN:  -- Mr. Garmashov as to what

16    he's received.  Unfortunately, my prior firm, Hall

17    Booth Smith, can't -- one of these was attackers

18    there, for the record.

19                THE COURT:  That's rough.

20                MR. KAUFMAN:  Hence, why they're there.

21    But a point of clarification, I wanted the Court to

22    know, these are on the lower end because they're

23    missing three or four months.  And that, of course,

24    is associated working with me here as well as in

25    just my time.  And these were iterations back and

PROCEEDINGS

1    forth and calls with counsel and e-mails.

2              Your Honor, in light of your direct words

3    and insinuations, perhaps you could order us to take

4    10, 15 minutes to attempt to negotiate it because we

5    have a resolution and we want to read it on the

6    record and be completely finished, as they have

7    counsel and a party with authority, and I can have

8    Mr. Garmashov available right now.

9              THE COURT:  Yeah.  You know what, though,

10   I do, unfortunately, have something that is supposed

11   to be starting in two minutes that I have to take in

12   chambers, so -- but what I -- here's what I will do,

13   I will put an outside date for you to write a joint

14   letter in about whether you were able to resolve it.

15   And if not, then you propose some -- you know, some

16   dates for supplemental briefing.

17             If there is this matter of incomplete

18   attorney's fees records for Mr. Kaufman, consider

19   whether you might either agree to a number or allow

20   me, if I end up having to decide an attorney's fees

21   motion, to try to triangulate that number based on

22   defense counsel's billing records, okay.

23             I mean, that's -- those are some of the

24   ways that you might try to -- want to try to work

25   this out.  But I also do want to give you some time

PROCEEDINGS

1    to cool down a little bit after the money's been

2    sent, after everything is said and done.

3            What I'm going to do is I am going to

4    provisionally docket the settlement agreement as a

5    sealed document.  Judge Koeltl may have other ideas,

6    particularly because it's really not contributing

7    anything.  It's not hiding anything other than

8    the -- you know, what's already out there and is not

9    going to be taken back.  So I'm going to

10   provisionally docket it, but leave it up to Judge

11   Koeltl whether, you know, it should be public or

12   not, okay.

13           So I'll give Mr. McLellan his clean copy

14   of the February agreement back.  And is there

15   anything else we need to do at this time?

16           MR. KAUFMAN:  No.  Although, certainly

17   (indiscernible) we can work it out now, it sounds

18   like if Your Honor is here and we can reach a

19   resolution, would we be able to bother you to put it

20   on the record and be finished if we are successful?

21           THE COURT:  You know what you could do,

22   you could actually write it out and sign it all,

23   okay, and then give it -- and then leave it with my

24   clerk, or, you know, just e-mail chambers if you

25   can, or call chambers and let us know it's here,

PROCEEDINGS

1    because I will not be able to physically be
2    available starting from about right now, okay.
3                MR. KAUFMAN:  Thank you, Your Honor.
4                THE COURT:  All right.  No, thank you,
5    all, for your time.  Thank you for coming in.
6                Anything else from defense counsel?
7                MR. McLELLAN:  Not from me, Your Honor.
8                THE COURT:  Okay.  So how about -- let's
9    give you two weeks.  That would be May 17th for --
10   I'll call it a joint status letter on the docket.
11   Joint status letter, May 17th on any outstanding
12   issues, okay.
13               MR. KAUFMAN:  And will that date also be
14   put as a docket order?
15               THE COURT:  Yes.
16               MR. KAUFMAN:  Okay.  Thank you.
17               THE COURT:  Yeah.  Okay.  All right.
18   Thank you very much, everyone.  All right.  We are
19   adjourned.
20               Again, requesting the parties order a
21   copy of the transcript.  Share the cost 50/50.
22
23                           0o0
24
25


AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1                    C E R T I F I C A T E
 2
 3        I, Adrienne M. Mignano, certify that the
 4   foregoing transcript of proceedings in the case of
 5   Garmashov v. United States Parachute Association,
 6   Inc.; Docket #21CV4917 was prepared using digital
 7   transcription software and is a true and accurate
 8   record of the proceedings.
 9
10
11   Signature  _____
                    Adrienne M. Mignano
12              ADRIENNE M. MIGNANO, RPR
13
14   Date:      May 19, 2023
15
16
17
18
19
20
21
22
23
24
25
```